Filed 10/10/24  P. v. Dye CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON BENJAMIN DYE,<br><br>    Defendant and Appellant.</td><td>H051343<br>(Santa Cruz County<br> Super. Ct. No. 22CR01273)</td></tr>
</table>

Aaron Benjamin Dye appeals from an order denying him conduct credits for time participating in a privately-run electronic home monitoring program.  The Penal Code authorizes conduct credits to individuals participating in detention programs that meet certain statutory criteria and are authorized by the relevant county.  (Penal Code, § 4019, subd. (a)(7) [authorizing credits for participation in home detention programs under section 1203.016].[1])  While Dye did not participate in an authorized home detention program, he contends that he was detained under an equivalent program and that denial of conduct credits for participating in that program violates equal protection.  We conclude that the Legislature had a rational basis for awarding conduct credits only to individuals in authorized home detention programs.  We therefore affirm the order denying Dye's request for conduct credits.

---

[1]  Subsequent undesignated statutory references are to the Penal Code.

# I. Background

In January 2023, Dye was charged with one count each of possession of a controlled substance with a firearm (Health & Safety Code, § 11370.1, subd. (a)), possession of an assault weapon (§ 30605, subd. (a)), and possession of a controlled substance (Health & Safety Code, § 11377.) Dye pleaded no contest to the first charge in exchange for dismissal of the two remaining charges.

The trial court sentenced Dye to 24 months supervised probation conditioned on 180 days in jail. The court credited Dye with one day already served and authorized Dye to serve the jail sentence on electronic home monitoring: specifically, the Custody Alternative Program (CAPS) operated by the sheriff's office.

During the sentencing hearing, the trial court stated that it authorized Dye to serve his sentence "on CAPS or private monitoring" and directed him to "have it set up with CAPS or show proof to the Court that you're signed up with Options or the other organization." Although Dye attempted to enroll in CAPS, he was told that the did not qualify. Consequently, on August 10, 2023, Dye enrolled instead in Options, a private electronic monitoring program. On August 15, 2023, the sentencing court confirmed with Dye's probation officer that Options was an acceptable electronic monitoring program.

On September 11, 2023, Dye filed a motion to modify his sentence, requesting that the trial court grant him conduct credits under section 4019 for time spent in the Options electronic home monitoring program. In support, Dye asserted that the program terms for CAPS and Options were substantially the same (i.e., equally custodial), that Options met the minimum requirements of section 1203.016, and that denial of section 4019 conduct credits would violate state and federal equal protection clauses.

During the hearing on his motion, Dye argued that he was similarly situated to individuals participating in CAPS, that the jail had "become much more strict about who they will allow in and out of ankle monitoring," and that "Option's guidelines are just as

2

strict, if not stricter than [CAPS]." The trial court denied Dye's motion. In so doing, the court observed "I don't think this is an equal protection issue. [¶] And we have essentially judicially have had discussions amongst the other judges and we all agree that it's not an equal protection—valid equal protection argument. [¶] We will, on occasion, grant those credits in a case-by-case basis. I chose not to in Mr. Dye's case mainly because the People were asking for prison and he ended up with only a 180-day jail sentence. I let him do that on the monitor."

Dye filed a timely notice of appeal. As the order denying Dye's motion was made after judgment, this court has jurisdiction over the appeal under section 1237, subdivision (b).

## II. DISCUSSION

### A. Mootness

We first consider whether Dye's appeal is moot because he has completed serving his jail sentence. Although the Attorney General initially argued that Dye's appeal is moot, in supplemental briefing the Attorney General conceded that it is not. The Attorney General's concession is well-taken.

Although Dye completed his jail sentence in full in February 2024, he remains on probation through August 2025. Were this court to determine that Dye should have been awarded conduct credits, those credits would be applied against his probation period. (*In re Strick* (1983) 148 Cal.App.3d 906, 910, fn. 1.) Accordingly, a favorable decision from this court would provide Dye practical relief, and Dye's appeal is not moot. (See *People v. Moran* (2016) 1 Cal.5th 398, 408, fn. 8; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120, fn. 5; *People v. DeLeon* (2017) 3 Cal.5th 640, 645.)

### B. Equal Protection

Dye's sole argument on appeal is that the trial court erred in refusing to award conduct credits under section 4019 for time spent in the Options private monitoring program. Dye contends that the Options program meets the minimum requirements of

3

section 1203.016 for home detention programs and that denial of conduct credits for his participation in such program violated equal protection. We review this equal protection claim de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

" '[S]ection 4019 . . . offer[s] prisoners in local custody the opportunity to earn "conduct credit" against their sentences for good behavior.' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1091.) For each four-day period in which a prisoner is confined, one day is deducted from his period of confinement "unless it appears by the record that the prisoner has refused to satisfactorily perform labor" assigned to him. (§ 4019, subd. (b).) In addition, for each such period another day is deducted "unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable regulations" established for the prisoner's confinement. (§ 4019, subd. (c).) Section 4019 applies to prisoners in county jails and a number of other situations (§ 4019, subd. (a)), including prisoners "participat[ing] in a program pursuant to Section 1203.016." (§ 4019, subd. (a)(7).)

Section 1203.016 in turn permits a county board of supervisors to authorize the correctional administrator to offer a home detention program in lieu of confinement in a county jail or other county correctional facility. (§ 1203.016, subd. (a); see also § 1203.016, subd. (g) [defining " 'correctional administrator' "].) Section 1203.016 requires the correctional administrator, with approval of the county board of supervisors, to administer a home detention program pursuant to written contracts (§ 1203.016, subd. (i)(1)), which require the contracting agency, among other things, to comply with applicable state correctional standards, to demonstrate financial responsibility, and to submit to annual review by the correctional administrator (*id*., § 1203.016, subd. (i)(3)B)(i), (iii).) Additionally, to participate in a home detention program, an individual generally must consent in writing to comply with the rules and regulations of the program and to allow searches "at any time for purposes of verifying . . . compliance

4

with the conditions of the detention."[2]  (§ 1203.016, subd. (b)(2).)  If the peace officer supervising a participant in an authorized home detention program has reasonable cause to believe that the participant is not complying with the rules or conditions of the program, the officer may, without a warrant, "retake the person into custody to complete the remainder of the original sentence."  (§ 1203.016, subd. (c).)  Finally, "unauthorized departures from the place of home detention," as well as willful failures to return at the prescribed time, are punishable as escapes under section 4532 (§ 1203.016, subd. (f)), which are punishable by a year or more imprisonment.  (§ 4532, subd. (a).)

Contrary to Dye's suggestion, Options did not satisfy section 1203.016's requirements.  As Dye conceded in supplemental briefing, there is no evidence in the record of any written contract between Options and the Santa Cruz County correctional administrator, as expressly required by section 1203.016.  Even more pertinently, while the Options program terms and conditions require a participant to permit "Options personnel to show up at their residence to inspect or retrieve equipment," they do not authorize Options personnel to enter the residence to verify compliance with those terms

_____

[2]  Section 1203.016, subdivision (b) provides in pertinent part:  "As a condition of participation in the home detention program, the inmate shall give consent in writing to participate in the home detention program and shall in writing agree to comply . . . with the rules and regulations of the program, including, but not limited, to the following rules:  [¶] (1) The participant shall remain within the interior premises of the participant's residence during the hours designated by the correctional administrator.  [¶] (2) The participant shall admit any probation officer or other peace officer designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention.  [¶] (3) The participant shall agree to the use of electronic monitoring . . . for the purpose of helping to verify compliance with the rules and regulations of the home detention program. . . .  [¶] (4) The participant shall agree that the correctional administrator in charge of the county correctional facility from which the participant was released may, without further order of the court, immediately retake the person into custody to serve the balance of the person's sentence if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, or if the person for any other reason no longer meets the established criteria under this section. . . ."

5

and conditions.  (By contrast, one of the conditions of the CAPS program is that "[a]ll residents of the household and you will permit admittance to your home to any office of the Electronic Monitoring Program or his/her designee at any hour of the day or night.")  Finally, nothing in the Options program subjects participants to immediate imprisonment or additional sentencing for failure to comply with its term and conditions.

These differences provide a rational basis for denying Dye and other participants in Options conduct credits under section 4019, which satisfies the equal protection guarantee.  Both the California and federal Constitutions "extend to persons the equal protection of law."  (*People v. Chatman* (2018) 4 Cal.5th 277, 287; see U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)  "[W]hen a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' "  (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).)  As a criminal defendant " 'does not have a fundamental interest in a specific term of imprisonment' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838), where a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts examine whether there is a rational basis for the difference.  (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.)  Moreover, "[t]he underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' "  (*Hardin*, *supra*, 15 Cal.5th at p. 852.)  " '[U]ntil the challenger shows that no rational basis for the unequal treatment is reasonably conceivable,' " a statutory classification must be presumed valid.  (*Ibid.*)

Here, there is a rational basis for treating defendants participating in home detention program authorized under section 1203.016 differently from programs such as Options that are not for purposes of section 4019.  As noted above, section 4019 gives prisoners credits "unless it appears by the record" that the prisoner has refused either to perform labor assigned to the prisoner or comply with relevant rules and regulations.

(§ 4019, subd. (b) [labor assignments]; § 4019, subd. (c) [rules and regulations].) These conduct credits "encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities." (*People v. Brown* (2012) 54 Cal.4th 314, 317.) It makes sense to award such credits where an individual is participating in an authorized home detention program in which participants must admit peace officers into their residence "at any time for purposes of verifying the participants compliance with the conditions of the detention." (§ 1203.016, subd. (b)(2).) The ability to conduct such inspections helps the officers administering such program ensure that participants are complying with the program's rules and conditions. In addition, the threat that such inspections may take place at any time—coupled with the ability of officers to "retake . . . into custody" any participant that the officer has reasonable cause to believe is not complying with the program's rules and conditions (§ 1203.016, subd. (c)) and the correctional administrator's ability to treat unauthorized departures from a place of home detention as an escape punishable by imprisonment for a year or more under section 4532 (§ 1203.016, subd. (f))—provides participants with a powerful incentive to ensure their own compliance.

The Options program lacks such assurances and incentives. Because the program requires participants only to allow Options personnel to come to a residence "to inspect or retrieve equipment," the program fails to provide reliable means to verify compliance with most of its terms and conditions. In addition, the Options program does not require participants to agree that they will be removed from the program and returned to government custody if they are not complying with program terms and conditions, and nothing in the Options program makes unauthorized departures from the designated residence an escape punishable by imprisonment. To the contrary, the Options program terms and conditions merely state that three non-compliance reports may result in termination from the program. As a consequence, Options fails to provide the same incentives to comply with the program's terms and conditions as a program authorized

7

under section 1203.016, and it makes sense to provide conduct credits only in authorized programs where there are greater assurances that participants are entitled to the credits.

We conclude that section 4019 does not violate equal protection by affording conduct credits only to participants in home detention programs that are authorized under section 1203.016 because section 1203.016's requirements provide assurance that participants in such programs are complying with the terms and conditions of those programs. In light of this conclusion, we need not consider whether other aspects of programs authorized under section 1203.016 provide a rational basis for treating such programs differently.

### III. DISPOSITION

The order on appeal is affirmed.

_____

BROMBERG, J.

WE CONCUR:

_____

LIE, ACTING P. J.


_____

WILSON, J.

*People v. Dye*
H051343